Thank you very much. May it please the court, Armin Skelniosky for Petitioner Shugang Wang. I'd like to reserve two minutes for rebuttal. In this case, Your Honors, we believe that the controlling case in this matter is Hu v. Holder, 652 F3rd 1011. As in the Hu case, the BIA also found that this was a private matter between the petitioner and the state-run agency government company. As in the Hu case, petitioner also was employed with a state-run company. As the court knows, workers were injured. He was requested by these workers to go and meet with the general manager for compensation. The manager said, no, we will not give you any money. So petitioner was chosen to organize a group to go to the municipal government. How many protests did he lead? It sounds like two. And what happened the first time? Was he arrested? The first time he was not arrested. So the protest itself did not lead to an arrest. That is the first one, yes. What happened the second time? The second time, the second time he goes there and basically the government, you know, they had the He blocked the municipal building and refused to leave and the police told him to leave. Right. And that's when he got arrested. At the same time, right. So what's the difference between the first time and the second time? Was it he was protesting or complaining about what was happening in a state-owned company? Or was it that he was blocking the building and refused to leave? Well, it seems like he wasn't given enough time to leave. They come and they say, no, you're blocking. And he was blocking. By his own statement, he was blocking. But he said he had no other choice but to do this. Well, that's because he didn't like the fact that they didn't respond to his first protest. But he was blocking the building, right? Right. Which the government. So what supports the inference that the police action against him was based on protesting against the state-owned business as opposed to blocking the municipal building? Because once he's arrested, you never hear from the police. They never mention to him again that you were blocking the building. He doesn't get arrested when he's not blocking the building. He does get arrested when he is blocking the building. Correct? Well, he's actually told the first time, he says, the government official says to him, look, you guys are kind of in the way, can you please leave? And then he leaves. The second time he goes back, you know, he does admit he's in front of this building because they never responded to his request for relief. So then what happens is. . . He doesn't like he doesn't get relief, so they block the building. At that time. And then they said, you're blocking the building. The police show up, you're blocking the building. And within minutes, it seems like, according to what he said, the police start. . . So how does the evidence compel the conclusion that the arrest came because of something other than blocking the building? Because once they bring him to the detention center, it's never mentioned ever again. Look, you're being charged with blocking the building. That's why you're here. They say to him, you had an unapproved meeting and that you are. . . spreading Western thoughts such as democracy, human rights, and freedom. So that's all he talked about. Did he sign a letter? Yeah, he was given. . . Upon his release, they showed him a letter. And let me see here. It appears that he did sign the letter. Is there. . . There's no letter. There's no letter. It's all testimony. And once again, it says that the letter said that he would no longer organize workers, he will not spread Western thoughts, democracy, human rights. He needs to report on a weekly basis. So once again, he's never charged, never convicted of blocking a building. There's no prosecution. Was he ever charged or convicted of anything? And that's where the similarities go with who. Oh, but that. . . We're still looking at the motivation. I mean, the holding of the BIA was that it wasn't on account of a protected ground. And I'm looking for, okay, what evidence compels the conclusion that it was. . . Because basically, once he's in the detention facility, as in who, in the who case, all they talk about is the anti-government. . . Well, they don't talk very much about that, do they? It's referenced by his testimony. It's referenced, but it's hardly the focal point. It's circumstantial at that point, but that can be as evidence of the anti-government. I mean, the government argues that the beating that he describes followed not whatever pro-Western statements he might have made, but a response to the police officers that could be perceived by them as a personal insult. Well, that's true. And the statement itself, the written statement, does not mention the cold-blooded animal comments. It only comes up in testimony in the court. And actually what he says is he goes, I said the workers initiated this, and the manager, Lee, was like a cold-blooded animal. Well, if you brothers and sisters had the same situation, what would you do? I said that you are the same as Lee. It never says you're a cold-blooded animal at this point. At this point they come in and they hit him with the baton. He fell off the chair, and he's kicked to the ground. At that point, as he was being beaten and kicked, he said you guys are cold-blooded animals like Lee. But actually the initial attack does not mention the cold-blooded animal as a direct insult. There was an adverse credibility finding by the I.J. Which the BIA rejected. Right. Did the I.J. have an alternative ground for denying Lee? He did not. No, he just said you're not credible, so therefore no asylum, no withholding, no cat. He doesn't go into the alternative, I would go through this. No, he does not. And so in that case, the BIA mainly focused on the credibility. That was the main issue. There were so many things that were brought up, but then the BIA itself said he was considered to be credible. And then they mentioned briefly there's no past persecution, and then there's no- Did the government in its brief to the BIA argue that even if he was credible it didn't amount to- I don't think that they filed a brief for that. I was having a little trouble with the-  Maybe the government can help us. The government, yeah, because the- Maybe it was a brief one, but no. Well, no, she just basically says, it's in the record, page 9, she basically says that it should be summarily affirmed. And it doesn't go into any argument whatsoever. It's page 9 and 10. It's a very simple just affirmance request. Anyway, so but then briefly, so once he's released, then he's forced to go back and report on a weekly basis for no other reason but based on this political opinion issue or anti-government issue, which as in who was the same issue. So you would find that that would be controlling in this case, too. I will give you time for rebuttal, but I want to go back to something you just said in terms of the scenario when he was beaten. I'm looking at the transcript at AR 118, and the scenario seems to be that I said you were the same as General Lee. Is that what you said to them? Yes. Did the police react to what you said? And the police behind me was so angry, so he hit me with police baton and I fell off from the chair. Right. Well, that appears to suggest that his statement to them, you're the same as General Lee, was the preceding factor, not something that was said in the midst of the beating. Well, but see, it doesn't say that he called me. He could have been the same as Lee, you know, based on a lot of reasons. I mean, authoritarian, you know, anti-protester. But what compels the conclusion was that the effort to defend a state-owned enterprise as opposed to a response to a personal insult. I mean, this is what the BIA pointed to specifically when it reached its finding. I don't know what you're trying to indicate compels a contrary finding. If this testimony, in fact, suggests that sequence of events was as the BIA describes, that is, he issues the personal insult and that's when the beating begins. But see, I don't – but once again, the statement doesn't mention – his personal statement written does not mention the cold-blooded animal. This came out only in – Well, I said you are the same as General Lee, you meaning the police officers. We don't know what the same is. But it doesn't matter what the same is. It's an insult directed at the police officers. And that appears to be, according to the BIA's finding, what precipitated the beating. What compels a different conclusion? Because once he goes through the beating, once he gets detained for 10 days, once he gets out, why is he released? You know, and they tell him you need to, you know, report because of this anti-government protest, the human rights, da-da-da. It's nothing about because you blocked the building, because you insulted an officer. They don't mention that. It's not mentioned. I'll still give you time for rebuttal. Okay. May I plead the court? Nancy Cantor on behalf of the Attorney General. Your Honors, the government's position today is that substantial evidence supports the agency's determination that Petitioner failed to demonstrate past persecution on account of a protected ground. In this case, Petitioner was arrested when he appeared at his second protest, blocked the entry to the municipal government, was given a warning by the police that he had five minutes to disperse, and failed to disperse. The only act that could even arguably amount, rise to the level of persecution, was a beating that was sustained after he called the police officers cold-blooded animals like General Lee. I'd like to point the court to page 119 of the record. It follows the previous discussion regarding what instigated or what the police officers' motivations were in beating the Petitioner. Earlier, on 118, he said, you are the same as General Lee. On 119, the record indicates that Petitioner testified before the immigration judge, I said that they are cold-blooded animals, the same as Manager Lee, and the two other police officers also came up and hit me with batons. So based on the record and the facts before us, it is clear that Petitioner sustained a beating only after he called the police officers cold-blooded animals like Manager Lee, if not once, if not twice, at least one time. Isn't this all a political statement? I disagree, Your Honor. No, I asked a question. I did. It sounds. These are protesters. They're out there. They're upset, and the police come in, and they say you're just like, you're just a monster like the guy in the company. It sounds like it's all of a piece. It's all of what? All of a piece. All of a piece. I disagree, Your Honor. In this, Petitioners were protesting, but Petitioner acknowledges and concedes that his protest was in violation of the law. He admits that he did not have a permit, which is required, and that they appeared without a permit, and they didn't bother to ask for a permit because they knew they wouldn't get one. That would be a much closer case to on account of political opinion. They flouted the laws, showed up at the doors of the municipal government, refused to disperse when they were told to, and he was detained as a result of that. None of that rises to the level of persecution. The only act that even arguably rises to the level of persecution is the beating he sustained when he called the police officers' names. Well, prior to the beating, there was this reference to Western thoughts such as democracy and human rights and so forth. Why doesn't that inject politics into the motivation? Well, Your Honor, that could simply be their appearance in front of the municipal government and their refusal to disperse. Even if we give the Petitioner a benefit of the doubt and says that is on account of political opinion, nothing up until that point rises to the level of persecution. The detention ---- Well, I'm not sure that helps you. If at that point politics is injected into it and the beating that could constitute persecution comes afterwards, how can we conclude that the beating wasn't motivated at least in part by the political motivation? I just ---- Well, the record ---- the question here is whether substantial evidence, whether a reasonable fact finder would be compelled to conclude to the contrary. In this case, we can argue about whether maybe, yes, no, there was political opinion in this case, but does the record compel it? I think not. Is this a pre-Real Idea Act case? This is a pre-Real Idea Act. So we're not dealing with the central reason doctrine, are we? If it's one of multiple reasons, that could be enough to support a conclusion that there was a connection to a protected ground. That's correct, Your Honor, but the question here is still whether substantial evidence supports the BIA's finding. That's the standard of review. Well, the BIA presumably finds that it didn't have anything to do with politics. The BIA finds that the initial arrest was the result of Petitioner's deliberate violation of the law, which he concedes. But the arrest isn't the persecution. As you pointed out, we've got to get to the beating before we get to something that really amounts to persecution. Right. And the beating was a ---- the beating was him calling the officers a name. It was in retaliation, or it could be. I mean, it could ---- even if it cuts either way, the question here is whether substantial evidence compels reversal. Can you help me with the procedural progress of this case? I have a copy of the brief to the Board from the IJ's decision where the IJ made an adverse credibility finding, and as I understand it, that was the sole basis for the IJ. The IJ said, I don't believe any of this. And the Board overturned that and said that there's no support for the adverse credibility finding. We have to credit what he said, but it doesn't amount to persecution or on account of political pain. So I have the brief from the Petitioner that says that the adverse credibility finding is no good, and I met my burden. I don't have the brief of the government. Did the government argue the alternative position? The government filed a motion for summary affirmance of the IJ's decision and nothing else. That's it? Yes, you're correct. So did the Petitioner really have a chance to address the argument that he didn't meet the, didn't satisfy the standards for on account of political opinion or persecution? I believe Petitioner addressed his arguments in his brief to the Board. Well, but the Board... He argued eligibility for asylum. Yeah. So in addition to challenging the IJ's adverse credibility ruling, he also  Okay. And the Board didn't bother to specifically address them? Well, it did when it rejected... Not the Board, but the government. No, the government did not. The government was happy to rest on the ad cred finding alone. But unless the Court has any other questions... I understand. ...the government's happy to rest on the briefs and the arguments presented. Thank you. Thank you. I took the rebuttal time you tried to save, so now you can have it back. Just looking at the Hu case one more time, it's just, you know, the absence of any legitimate criminal prosecution is circumstantial evidence suggesting the Chinese government was not legitimately punishing... But there's not doubt here that, in fact, your client was blocking the building and hadn't gotten a permit. So there's also not much doubt that he could have been prosecuted, that they may have exercised some mercy or chose to go a different way. It doesn't deny the fact that he was blocking the building when he got arrested. But in Hu, he says twice he has no other choice. I mean, there's no other redress he has except doing this. He can't, you know, file... Is that a get-out-of-jail-free card? Well, that's, you know, what else can he do?  I mean, he can protest all sorts of things. That doesn't mean you've got to get what you want. Sometimes you don't get what you want. Right. His no other choice is simply a way of saying, well, I'm not getting what I want, so I'm going to do this. That's a three-year-old's logic. But the first time he goes there, there's no issue. I mean, they tell him, you know, we'll listen to you. We promise we'll get back to you. And there's no arrest. You're kind of blocking here. Why don't you leave? And he left. Second time he shows up, I mean, you would expect the same thing to happen again. Second time he shows up, next time the police show up, you've got five minutes. Why would you expect the same thing to happen again when he was blocking the building, which he didn't do the first time? They'd given him one warning. He hasn't responded to it. Why should he expect, well, gee, they gave me a warning. They're just going to keep giving me warnings. I can do this forever. They never asked him that question, but I would assume that because he wasn't arrested the first time, he probably assumed that he wouldn't be arrested the second time. But once again, that's not in the record. But it comes down to the fact that he was never prosecuted for that. He never charged for blocking. He was never charged for calling police, you know, bad names. That's it. Thank you. We thank both counsel for your arguments. The case just argued is submitted. The next case is Urrutia Orellana v. Holder. Thank you. Thank you.
judges: Schroeder, Noonan, Clifton